**COMMUNITY HOSPITAL OF ANDALUSIA, INC., Plaintiff,**

v.

**Charles G. TOMBERLIN, M.D., Defendant.**

**Civ. A. No. 83–T–099–N.**

United States District Court, M.D. Alabama, N.D.

Feb. 28, 1989.

Walter R. Byars and James A. Byram, Jr., Steiner, Crum & Baker, Montgomery, Ala., and Jerry E. Stokes, Andalusia, Ala., for plaintiff and third-party defendant.

Kevin David McDonald and Junius C. McElveen, Jones, Day, Reavis & Pogue, Washington, D.C., for plaintiff.

Frank Tipler, Tipler & Tipler, Andalusia, Ala., and Ray S. Bolze, William E. Wallace, Jr. and E. Lynn Malchow, Howrey & Simon, Washington, D.C., for Tomberlin.

MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Community Hospital of Andalusia, Inc., which is located in Andalusia, Alabama, has brought this lawsuit seeking a declaration that, to the extent a 35–year exclusive contract between it and defendant Charles G. Tomberlin, M.D., a radiologist, binds the parties for more than five years, the contract violates §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C.A. §§ 1, 2. Based on the arguments of counsel and the evidence presented at a nonjury

trial, the court concludes that it cannot grant the requested declaration.

## I.

The events leading up to filing of this lawsuit may be summarized as follows. Dr. Tomberlin moved to Andalusia in 1964 to establish a practice. Before his arrival, the two hospitals in town, Andalusia Hospital and Columbia Hospital, had been relying on an itinerant radiologist from Florida who visited Andalusia two days a week. Both hospitals were eager to obtain the services of a full-time radiologist who would live in Andalusia and be available daily. At this time, there was a shortage of trained radiologists, especially in rural areas. From 1964 to 1970, Tomberlin provided daily radiological coverage at both local hospitals.

In 1970, Tomberlin informed Andalusia Hospital that it was time for him to make a career decision. He desired to remain in Andalusia and raise his family there, and therefore wanted some commitment from the hospital. He discussed establishing a private radiological office in town where he could establish an "out-patient" practice and still cover the "in-patient" radiological work at both hospitals. The attorney for Andalusia Hospital informed Tomberlin that the hospital wanted him to work full-time at the hospital rather than spend time at a private office of his own, and that the hospital was willing to give him a 35–year contract in order to insure his coverage of their radiology department until his retirement at age 70. Tomberlin had, by then, established a good reputation in the community and local physicians were desirous of his long-term commitment to the hospital.

Tomberlin and Andalusia Hospital entered into a contract under which Tomberlin and his employees are the exclusive providers of radiological services at the hospital; no other radiologist may practice at the hospital except as Tomberlin's employee. Under the contract, which was primarily drafted by the hospital's attorney,

the hospital provides the necessary facilities and equipment while Tomberlin and his employees perform all radiological services at the hospital. Tomberlin's fees, although billed separately from other hospital charges, are collected through the hospital's billing system and are split between Tomberlin and the hospital. The contract was created for a period of 15 years, with an option to Tomberlin to renew for a second 15–year period and then for another five-year period, for a total contract period, at Tomberlin's option, of 35 years. The contract also provides that the fee division between Tomberlin and the hospital is subject to renegotiation if changes occur in state or federal programs for reimbursement of health care expenses. A year later, in 1971, Tomberlin entered into a similar 35–year exclusive contract with Andalusia's other hospital, Columbia Hospital. With these two contracts, Tomberlin has, in effect, exclusive control over radiological services in the area served by the two hospitals.

In 1980, Community Hospital of Andalusia, Inc. acquired Andalusia Hospital and thereby succeeded to its obligations under the contract with Tomberlin. Community Hospital is an affiliate of Hospital Corporation of America (HCA), which operates hospitals throughout the United States and some foreign countries. HCA immediately approached Tomberlin about renegotiating his contract. HCA was unsuccessful in its renegotiation efforts.

Community Hospital then brought this action seeking a declaratory judgment that the renegotiation clause in the contract had been triggered by enactment of certain new federal laws and the promulgation of new regulations thereunder. The hospital subsequently amended its complaint to allege that the contract violates § 1 of the Sherman Antitrust Act and that Tomberlin is guilty of monopolization in violation of § 2 of the Act. This court dismissed the renegotiation claim, leaving only the antitrust claims for trial.[1]

1. Tomberlin also filed a counterclaim and third-party complaint against Community Hospital

and HCA, alleging that they had also violated §§ 1 and 2 of the Sherman Antitrust Act and

## II.

Community Hospital's first charge is that the 35–year provision in its contract with Tomberlin violates § 1 of the Sherman Antitrust Act. Section 1 of the Act provides that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade ... is ... illegal." 15 U.S.C.A. § 1. However, because every contract is in some measure a restraint of trade, the Supreme Court has repeatedly recognized that § 1 was intended to prohibit only "unreasonable" restraints of trade. E.g., Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, ——, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988). Whether a challenged restraint is reasonable or unreasonable turns on whether the "restraint enhances competition. Under the Sherman Antitrust Act the criterion to be used in judging the validity of a restraint on trade is its impact on competition." National Collegiate Athletic Assn. v. Board of Regents of the University of Oklahoma, 468 U.S. 85, 104, 104 S.Ct. 2948, 2961–62, 82 L.Ed.2d 70 (1984).[2] The parties here agree that, in determining whether the 35–year provision in the contract between Community Hospital and Tomberlin is unreasonable, the court must apply the so-called "rule of reason," in which the court, on a case-by-case basis, "weighs all of the circumstances of a case." Business Electronics Corp., supra, quoting Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977).[3]

To establish, under the above principles, an unreasonable restraint of trade, a plaintiff bears the initial burden of, first, identifying the relevant market within which the restraint operates and, second, proving that the restraint impermissibly lessens competition within that market. Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961). The term relevant market encompasses notions of the products involved and the geographic areas in which they are sold. Id.; see also Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 18, 104 S.Ct. 1551, 1561, 80 L.Ed.2d 2 (1984). If the plaintiff meets its initial burden, then the burden passes to the defendant to offer evidence that a legitimate objective is served by the challenged behavior. That justification will be lost if the plaintiff shows that it can be achieved by an alternative that is substantially less restrictive on competition. P.E. Areeda, VII Antitrust Law § 1502, p. 372.

Community Hospital has identified two markets: first, the job market in which hospitals seek to contract with radiologists, a geographic market which conceivably extends throughout the country; and, second, the patient market in which patients consume diagnostic radiological services provided by radiologists, a geographic market which extends only to the City of Andalusia and two nearby communities. This geographic market is hereinafter referred to as the "Andalusia area."[4] The parties

---

that they had committed several torts under Alabama law. Tomberlin's claims were dismissed prior to trial.

2. As the Supreme Court went on to explain in National Collegiate Athletic Assn.,

The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of our democratic political and social institutions.

468 U.S. at 104 n. 27, 104 S.Ct. at 2962 n. 27, quoting Northern Pacific R. Co. v. United States,

356 U.S. 1, 4–5, 78 S.Ct. 514, 517–18, 2 L.Ed.2d 545 (1958).

3. At times, Tomberlin appears to suggest that anticompetitive behavior should be tolerated here simply because a hospital and a doctor are involved. The Supreme Court has, however, repeatedly "refused to tolerate manifestly anticompetitive conduct simply because the health care industry is involved." Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 25 n. 42, 104 S.Ct. 1551, 1565 n. 42, 80 L.Ed.2d 2 (1984).

4. Both parties agree on the definition of the job market. The parties also agree that the product involved is diagnostic—as opposed to therapeutic—radiological services. Diagnostic services include x-ray, nuclear medicine, and ultrasound procedures.

agree that the exclusive contract between Community Hospital and Tomberlin has an impact in both markets. They also agree that the contract's restraint within the job market for radiologists is not unreasonable. Therefore, the only issue in dispute is whether the contract—in particular, its 35–year provision—unreasonably restrains competition within the patient market.

In determining whether Community Hospital's exclusive contract with Tomberlin impermissibly inhibits competition within the patient market, the court must be mindful of one overriding factor in this case: Community Hospital is not a patient within that market. Community Hospital, nevertheless, maintains that it has the legal right to bring this lawsuit for declaratory relief in order to avoid continued exposure to liability and damages from a patient who might actually bring such a lawsuit. To this extent, Community Hospital argues, it is standing in the shoes of the patients within the market.

This court agrees with Community Hospital that, if its contract with Tomberlin indeed violates the Sherman Antitrust Act, the hospital has a sufficient personal stake in this lawsuit—avoiding exposure to legal liability and damages from its patients—to bring this lawsuit. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 719 (4th Cir.1969) (newspaper publisher seeking declaration that its distribution arrangement with various route owners violated antitrust laws was not required to "accrue peril" before bringing lawsuit). But it goes without saying, that whenever a party claims to be asserting the position of someone absent from the litigation, a court has an independent responsibility to determine whether the position being put forward is, in fact, that of the absent party.

Community Hospital in good faith initially argues that Tomberlin in effect, through his two exclusive contracts with the only two hospitals in the Andalusia area, has control over all radiology services in the area, to the exclusion of any other radiologist. Community Hospital further argues that, while these two contracts restrain competition, both it and Tomberlin have a "legitimate justification" for the exclusive contracts. As the Federal Trade Commission has suggested:

> There is reason to believe that in some circumstances at least, the use of exclusive contracts in certain hospital departments can facilitate efficient delivery of services in a number of ways. It can increase the hospital's control over operation of the department, ensure full-time availability of services, lower costs through standardization of procedures and centralized administration of the department, permit better scheduling of the use of facilities, facilitate maintenance of equipment, improve supervision of support staff and working relationships between the staff and physicians, and improve the quality of services by assuring that physicians perform enough procedures to maintain their proficiency, have an incentive to upgrade their skills, and are effectively subject to hospital standards of quality.

*In re Burnham Hospital,* 101 F.T.C. 991, 993 (1983). Community Hospital, therefore, does not argue that such exclusive contracts should be outlawed altogether, so as to open up the area and allow one or more other radiologists to come in and compete to render radiological service to patients at the two hospitals; the hospital does not argue for an environment in which

---

Tomberlin, however, contends that the patient market should extend geographically to all of Covington County, which is served by three hospitals, including two in Andualusia and one just across the Florida border. *See Tampa Electric Co.,* 365 U.S. at 327, 81 S.Ct. at 628 (the geographic market is the area in which the consumer can practically turn for alternative supplies of the relevant product). Tomberlin also contends that there is no specific market for radiological services because such services cannot be separated from hospital services. *Cf. Jefferson*

*Parish Hospital District No. 2,* 466 U.S. at 19, 104 S.Ct. at 1562 ("whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items"). Tomberlin also contends that the product market should include not only x-rays furnished by Tomberlin but x-rays furnished by family practice physicians in Andalusia as well. Since Community Hospital cannot prevail in this lawsuit, even under its definition of patient market, the court need not resolve this definitional dispute.

patients would have a right to choose from among two or more radiologists.[5]

Instead, Community Hospital argues, with somewhat of a sleight of hand, that the above benefits for patients may be achieved through alternative means. The hospital argues that, if the 35–year time period in Tomberlin's contract were reduced to three or five years, then every few years, in order to maintain his exclusive contract, Tomberlin would have to face the prospect of competing with other radiologists; the hospital goes on to argue that Tomberlin would be encouraged to perform better because competition would be periodically waiting in the wings. Community Hospital fails to add that, should its contract be so reformed, it (but not its patients) would decide whether Tomberlin's services should be continued. The patients would still have no real choice; they would still be restricted to the one radiologist chosen by the hospital. Competition within the patient market would not be significantly affected by the reformation.

To be sure, it would be to the benefit of the hospital's patients that Tomberlin's contract be reformed so as to encourage him to do a better job. But benefiting patients, while hopefully a result of competition within the patient market, is not necessarily the same as benefiting competition itself within that market. The former may be achieved directly through simple contract law; the latter is the principal focus of the antitrust laws. This lawsuit is in reality about contractual reformation, not about competition within the patient market. Tomberlin's doing a better job, as the hospital wants, would be due not to greater competition within the patient market, but to the hospital's having greater negotiating power with him. The expected increased benefit to the patients would not rest on increased open and unrestrained competition, but on the simple good will of the hospital, on the mere hope that, in deciding whether to recontract with Tomberlin, the hospital will act in the best interests, both economically and medically, of its patients.

Community Hospital cleverly couches its contractual argument in antitrust law by confusing two markets: the patient market with the radiologist job market. The hospital identifies a violation in the patient market (patients are restricted to only one radiologist in the Andalusia area), but the relief it seeks in this lawsuit would affect not that market but the job market in which the hospital competes. The relief would merely allow the hospital to enter the patient market on a more regular basis.

Thus, if this court were to grant the relief requested, the only real and certain winner would be Community Hospital. It, in conjunction with Columbia Hospital, would be able to continue its control over radiology services in the patient market while at the same time ridding itself of Tomberlin, with whom it is now embroiled in a deep contractual dispute. The issue presented by this lawsuit is not opening up the patient market for competition or reducing restrictions on competition within that market, for this lawsuit cannot achieve that end; the issue here is how can Community Hospital lawfully break Tomberlin's contract and reenter the job market for a new radiologist.

### III.

■ Community Hospital further charges that, with his two exclusive contracts, Tomberlin possesses monopoly power in violation of § 2 of the Sherman Antitrust Act. 15 U.S.C.A. § 2. To establish such a violation, Community Hospital must prove, among other things, the possession of monopoly power in the relevant market. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). Monopoly power is "the power

---

5. Since Tomberlin wants to keep his contracts exclusive, he obviously does not make this argument either. To this extent, this lawsuit could be considered collusive, in that neither party may be fully presenting the viewpoint of patients, the group whose market is being analyzed.

Both Tomberlin and Community Hospital suggest that the Andalusia area is too small to support more than one radiologist. However, because neither of them really wants more than one radiologist in the area, their suggestion is suspect.

to control market prices or exclude competition." *Id.*, at 571, 86 S.Ct. at 1704. As with its claim under § 1, the hospital has identified the relevant market at issue as being the patient market. And, as with its claim under § 1, the hospital then shifts its focus to the radiologist job market—that is, the hospital wants to reform the 35–year contract to reduce its length to five years, so as to allow it, the hospital, to compete more often in the radiologist job market. Community Hospital does not seek to reform the patient market. It does not seek to keep Tomberlin, or anyone who might replace him, from maintaining monopoly power in the patient market by keeping exclusive contracts at both hospitals; it does not seek to open up the patient market for radiologists in the Andalusia area by giving patients a choice from among several radiologists. Community Hospital, in short, does not seek relief from monopoly within the patient market.

## IV.

The court would finally add that, by denying declaratory relief to Community Hospital, the court should not be understood as holding that the hospital's exclusive contract with Tomberlin does not violate §§ 1 and 2 of the Sherman Antitrust Act. In passing the Act, "Congress was dealing with competition, which it sought to protect, and monopoly, which it sought to prevent." *Standard Oil Co. v. F.T.C.*, 340 U.S. 231, 249, 71 S.Ct. 240, 249, 95 L.Ed. 239 (1951), *quoting A.E. Staley Manufac-*

*turing Co. v. F.T.C.*, 135 F.2d 453, 455 (7th Cir.1943). The relief sought by Community Hospital would further neither goal within the market under scrutiny here: it would neither promote competition nor prevent monopolization within the Andalusia patient market. Therefore, whether the contract between Community Hospital and Tomberlin does, in fact, violate the Sherman Antitrust Act must await another day, when another party truly interested in having such determined comes forward.[6]

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Community Hospital of Andalusia, Inc.'s request for declaratory judgment be and it is hereby denied.

It is further ORDERED that costs be and they are hereby taxed against the plaintiff, for which execution may issue.

---

**6.** The court should not be understood as saying that length of contract is not a relevant consideration in analyzing an antitrust claim. For example, if Community Hospital had established an impermissible lessening of competition within the radiology job market due to its exclusive contract with Tomberlin, *see e.g., Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. at 30 n. 51, 104 S.Ct. at 1568 n. 51, the court could have at least two choices, depending on the circumstances: voiding the exclusiveness feature in the contract or reforming the contract's length to five years, as an alternative, less restructured means of meeting the hospital's need for an exclusive contract, assuming that need is legitimate. But in this hypothetical, unlike in the actual lawsuit filed by Community Hospital, the relief would specifically address the challenged market, not some other market.

Also, if Community Hospital had presented some evidence that the *length* of Tomberlin's contract specifically affected the patient market, then the contract's length would be a relevant focus here. For example, the hospital might have made a showing that the Andalusia area could comfortably support more than one radiologist and that, but for the extreme length in Tomberlin's exclusive contracts with the two hospitals, other radiologists would be attracted to the area. In contrast in this lawsuit, the two factors—that Tomberlin's contracts with the two hospitals are exclusive and that the market, as Community Hospital defines it, can only support one radiologist—so totally and securely restricts competition within the patient market, that the length of the two contracts is irrelevant.